IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ELAINE BRUNSON,

    Plaintiff,

v.                              CIVIL NO.: WDQ-10-3045

HOWARD COUNTY BOARD OF
EDUCATION, et al.,

    Defendants.

MEMORANDUM OPINION

Elaine Brunson sued the Howard County Board of Education ("the Board"), Jennifer Clements, Cynthia Hankin, and Linda Wise (collectively "the Defendants") for violations of 42 U.S.C. § 1983 and Maryland law. For the following reasons, the Defendants' motion to dismiss will be granted in part, and denied in part. Brunson's motion for summary judgment will be denied.

I. Background[1]

Brunson's son attends Atholton High School ("AHS") in Howard County, Maryland. Compl. ¶ 1. She "has had several disputes with school administrators at [AHS]" about "the

---

[1] For the motion to dismiss, the well-pled allegations in Brunson's complaint are accepted as true. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). For Brunson's motion for summary judgment, the Defendants' evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

differential treatment of her son." Id. ¶ 6. On September 18, 2009, her son was accused of cheating on a Spanish exam. Id. ¶ 8. Brunson met with school officials about the incident, but "was never given a satisfactory response." Id.

In December 2009, Brunson circulated pamphlets "complaining about her treatment and that of her son by [AHS] and Board administrators" and "accusing these officials of being 'bullies' and of discriminating against her son." Id. ¶ 9. The pamphlet stated that "[t]he principal at [AHS] condones . . . [r]acial discrimination, harassment and intimidation," and listed several occasions when AHS teachers had treated black students, including Brunson's son, less favorably than white students. Defs.' Mot. to Dismiss, Ex. 4. According to Marcy Leonard, AHS's principal at the time, Brunson's pamphlets "caused a great deal of distress and upset among members of the faculty of AHS," and at least one teacher "no longer [felt] comfortable staying after the contractual end of the day" because she "feared for her safety." Marcy Leonard Aff. ¶ 9, Nov. 3, 2010.

On December 8, 2009, Wise, who was the Board's chief academic officer, issued Brunson a denial of access notice which "banned [her] from [AHS] property for one year." Compl. ¶¶ 10-11. The notice stated that Brunson was "NOT permitted onto the property known as [AHS]" or "any other Howard County Public School System's property at any time, for a period of one (1)

year due to . . . [d]isruptive behavior" and "unauthorized leafleting." Defs.' Mot. to Dismiss, Ex. 5.[2]

On June 23, 2010, Brunson was terminated from her job as a bus driver for Tip Top Transportation, which served the Howard County school system. Id. ¶¶ 19-20. She was "told that she was being terminated because Hankin, the principal of Deep Run Elementary School, did not want her on school premises." Id. ¶ 21. Brunson alleges that Hankin's actions "were in retaliation for the pamphlets [she] distributed." Id. ¶ 22. Hankin states that she approached Brunson's supervisor because she had "receiv[ed] complaints from parents of Deep Run students concerning the operation of [Brunson's] bus." Cynthia Hankin Aff. ¶¶ 6-8, Feb. 10, 2011.

On September 10, 2010, Brunson attended her son's football game at AHS. Compl. ¶ 13. She was approached by Clements, AHS's new principal, who "stated that [Brunson] would have to leave the game." Id. ¶¶ 13-14. Brunson refused to leave and was arrested by a Howard County police officer for criminal trespass. Id. ¶¶ 15-18.[3]

---

[2] Although the pamphlet and notice are not attached to Brunson's complaint, the Court may consider them without converting the Defendants' motion to dismiss to one for summary judgment. The documents are "integral to and explicitly relied on in the complaint" and Brunson has not challenged their authenticity. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

[3] Clements states that she sought the assistance of law enforcement to remove Brunson from the game because Brunson had

On October 22, 2010, Brunson sued the Defendants in the Circuit Court for Howard County alleging that they had violated the First Amendment and Article 40 of the Maryland Declaration of Rights, and for intentional interference with contractual relationships. ECF No. 1. The Defendants removed to this Court on October 27, 2010. ECF No. 1. On December 29, 2010, the Defendants moved to dismiss. ECF No. 16. On January 24, 2011, Brunson opposed that motion, and moved for summary judgment. ECF No. 16.

II. Analysis

A. Standards of Review

1. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff

---

violated the denial of access notice, which was issued before Clements became AHS's principal. Jennifer Clements Aff. ¶¶ 7-9, Nov. 3, 2010.

must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

2. Summary Judgment

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

5

*Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. The Defendants' Motion to Dismiss

1. First Amendment Claim

Count I of Brunson's complaint, brought under 42 U.S.C. § 1983, alleges that the Defendants violated her First Amendment right to free speech. The Defendants argue that Count I must be dismissed because "neither the Board of Education nor the Individual Defendants, sued in their official capacities, are 'persons' under Section 1983." Defs.' Mot. to Dismiss 10.

a. Claim Against the Board

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

6

*Atkins,* 487 U.S. 42, 48 (1988). Neither "States [n]or government entities that are considered arms of the state for Eleventh Amendment purposes" are "persons" under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70 (1989). Whether a defendant is an arm of the state for Eleventh Amendment purposes depends "upon the nature of the entity created by State law." *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977).

Maryland county school boards "have long [been] considered . . . State agencies rather than independent, local bodies"; they are not "persons" under § 1983. *James v. Frederick Cnty. Pub. Schs.,* 441 F. Supp. 2d 755, 760 (D. Md. 2006). Accordingly, the Board cannot be sued under § 1983, which Brunson appears to concede in her opposition to the Defendants' motion. *See* Pl.'s Opp'n 4. Count I will be dismissed against the Board.

### b. Individual Defendant Claims

Clements, Hankin, and Wise argue that Count I should be dismissed against them because they also are not persons under § 1983, and because they are entitled to qualified immunity. Defs.' Mot. to Dismiss 10-14. Brunson contends that she has sued these defendants in their individual capacity, and they are not entitled to qualified immunity because she has alleged that they violated her clearly established constitutional right. Pl.'s Opp'n 4-5.

### i. Nature of the Claims

State officers sued for damages in their official capacities are not "persons" under § 1983 because such official-capacity suits "generally represent only another way of pleading an action against [the] entity of which [the] officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). State officials sued in their individual capacities are "persons" for purposes of § 1983. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). Although it "is obviously preferable for the plaintiff to be specific in the first instance," he "need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 59-60 (4th Cir. 1995).

When a plaintiff fails to specifically allege capacity, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. Indications that the suit is brought against the official as an individual include the plaintiff's "failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint." *Id.* Another indication may be "a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits." *Id.* And, because qualified immunity is

available only in an individual capacity suit, the defendant's assertion of that defense "indicates that the defendant interpreted the plaintiff's action as being against him personally." *Id.* The underlying inquiry is "whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly" from the complaint. *Id.*

Brunson has not alleged that the individual defendants acted in accordance with a Board policy or custom. Rather, she alleges that their actions "were taken in response to . . . Brunson circulating the . . . pamphlet criticizing [AHS] school officials." Compl. ¶ 27. Brunson also seeks compensatory and punitive damages from the individual Defendants, *Id.* ¶ 29, and the Defendants have argued that they are entitled to qualified immunity, which "suggests that [they] perceived the complaint to state a claim against them as individuals," *Biggs*, 66 F.3d at 61. Brunson's intent to hold Clements, Hankin, and Wise personally liable is fairly ascertainable, and Count I will not be dismissed against them on the basis that they are not § 1983 "persons."

### ii. Qualified Immunity

"Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). Qualified immunity is an immunity from suit "rather than a mere defense to liability; and like an

9

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, questions of qualified immunity should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell*, 472 U.S. at 526.

Resolution of qualified immunity is a two-part inquiry:

First, [the court] must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

*Cloaninger*, 555 F.3d at 330-31 (quoting *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003)).

To state a claim for First Amendment retaliation, Brunson must show that: (1) she engaged in constitutionally protected speech, (2) the defendant engaged in a retaliatory action which adversely affected her protected speech right, and (3) there is a causal relationship between her protected speech and the defendant's action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

Brunson has alleged that she circulated pamphlets complaining "about her treatment and that of her son by [AHS]

10

and Board administrators." Compl. ¶ 9. The pamphlet "was not obscene, did not threaten violence or suggest that others engage in violent behavior." Id. ¶ 10. "[I]n response to the pamphlet," Wise issued Brunson the denial of access notice, and Clements "forced [her] to leave a football game at [AHS] and [had her] criminally charged with trespass." Id. ¶¶ 11-12, 26. Also because of the pamphlets, Hankin told Brunson's employer that she "did not want [Brunson] on school premises" or "working on a route involving [the school]," which led to Brunson's termination. Id. ¶¶ 21-22.

The Defendants argue these allegations do not state a constitutional violation because Brunson has not alleged that her speech was constitutionally protected. Specifically, the Defendants contend that distribution of the pamphlets was not protected because: (1) the pamphlets contained disruptive or defamatory speech, and (2) public schools are "nonpublic forums in which the exercise of free speech can be limited." Defs.' Mot. to Dismiss 14-26.

In the public school setting, speech that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others" is "not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). This exception "is a narrow one" and applies only when there is a "specific and significant fear of disruption." *Brown ex rel. Brown v. Cabell*

11

Cnty. Bd. of Educ., 605 F. Supp. 2d 788, 793-94 (S.D. W.Va. 2009). The Defendants also correctly note that defamatory speech is generally not protected under the First Amendment, R.A.V. v. City of St. Paul, 505 U.S. 377, 383 (1992), and that access to nonpublic forums may be restricted if "the restrictions are reasonable and not an attempt to suppress expression merely because public officials oppose the speaker's view," Goulart v. Meadows, 345 F.3d 239, 248 (4th Cir. 2003).

Although Brunson may ultimately be unable to prove that the pamphlets were protected speech, her allegations are sufficient at this stage of the litigation.[4] Accepting the well-pled allegations in the complaint as true, Brunson distributed pamphlets that criticized school officials' treatment of her son because of his race. She has alleged that she engaged in protected speech, and stated claims for First Amendment retaliation against Clements, Hankin, and Wise.

But Clements, Hankin, and Wise are protected by qualified immunity if their actions did not violate "clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A constitutional right is clearly established if "a reasonable

---

[4] See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 317 (4th Cir. 2006)(district court should not dismiss First Amendment retaliation claim under Rule 12 (b)(6) when it "cannot say that [the plaintiff] will be unable to build a factual record which demonstrates that his remarks were [protected speech]").

official would understand that what he is doing violates that right" even if the "very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Under the clearly established standard, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) (internal quotation marks omitted).

Brunson alleges that Hankin sought to have her terminated, and that Wise and Clements denied her access to AHS property, because she complained about the school's mistreatment of her son. At this stage, the Court must accept these allegations as true. *Mylan Labs.*, 7 F.3d at 1134. "Read in th[at] proper light, [Brunson's complaint] alleges that the [Defendants] retaliated against [her] for making protected statements that they did not like. Such activity does not merely implicate the gray edges of the right [Brunson] asserts; it goes to its very core." *Ridpath*, 447 F.3d at 321. Brunson has alleged that Clements, Hankin, and Wise violated clearly established law of which a reasonable person would have known. Count I will not be dismissed against those defendants.[5]

---

[5] Because Article 40 of the Maryland Declaration of Rights is read "*in pari materia* with the First Amendment," the motion will also be denied as to the Article 40 claim against Clements, Hankin, and Wise. *Nefedro v. Montgomery Cnty.*, 414 Md. 585, 593 n.5, 996 A.2d 850 (2010). It will be denied as the Article 40 claim against the Board because "local government entities . . . have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents

## 2. Intentional Interference with Contractual Relationships

Count III alleges that Hankin intentionally interfered with Brunson's employment at Tip Top. Hankin argues that Count III should be dismissed because Brunson's allegations do not state a claim for interference with contractual relationships. Defs.' Mot. to Dismiss 30.[6]

Brunson and the Defendants agree that she has failed to allege the existence and breach of a contract. Pl.'s Opp'n 14-15; Defs.' Mot. to Dismiss 30-31. But Brunson argues that Count III should be construed as a claim for intentional interference with economic relationships. Pl.'s Opp'n 14-15.

To state that claim under Maryland law, Brunson must allege: "(1) that [Hankin] has committed intentional and willful acts; (2) calculated to cause damage to [Brunson] in [her]

---

and employees within the scope of their employment." *DiPino v. Davis*, 354 Md. 18, 51-52, 729 A.2d 354 (1999). Brunson has alleged that the individual Defendants violated her rights under Article 40 in their roles as "employees and agents of the Board," Compl. ¶ 37, and the Defendants have not argued that her allegations are insufficient to show the Board's supervisory liability.

[6] To state a claim for intentional interference with contractual relationships under Maryland law, the plaintiff must show: "(1) the existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 503, 665 A.2d 297 (Md. Ct. Spec. App. 1995) (internal quotation omitted).

lawful business; (3) done with unlawful purpose of causing such damage, without right or justification; and (4) that actual damage has resulted from those acts." *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 691 (D. Md. 2001) (*citing Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 652, 650 A.2d 260 (1994)).

To support this claim, Brunson has alleged that Hankin told her supervisor at Tip Top that she did not want Brunson driving a bus route that involved Deep Run Elementary, and that Hankin's actions damaged Brunson's "lawful business" because they resulted in her termination. Compl. ¶¶ 19-22. She has also alleged that Hankin was motivated by her disagreement with Brunson's pamphlets, which Brunson contends was an "unlawful purpose." *Id.* ¶ 22. Hankin contends that these allegations do not show an unlawful purpose. Defs.' Reply 13.

To satisfy the unlawful purpose element, the defendant's conduct must be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Lyon v. Campbell*, 120 Md. App. 412, 432, 707 A.2d 850 (Md. Ct. Spec. App. 1998)). Having alleged that Hankin's conduct was retaliation for her constitutionally protected speech, Brunson has also alleged an unlawful purpose. *See id.* Count III will not be dismissed.

C. Brunson's Motion for Summary Judgment

Brunson has moved for summary judgment on all claims. ECF No. 19. In opposition, the Defendants have presented affidavits from Clements, Hankin, and Leonard. There is testimony in Clements's affidavit that she had Brunson removed from the football game because she had violated the denial of access notice, and not because she disagreed with the pamphlets, and in Hankin's affidavit that she approached Brunson's supervisor because of parent complaints. Thus, a reasonable jury could conclude that there was no "causal relationship between [Brunson's] speech and the defendant's action," and Hankin did not act with an unlawful purpose. *Suarez*, 202 F.3d at 686. Leonard's affidavit about the disruption caused by Brunson's pamphlets also shows a genuine dispute about whether the pamphlets are protected speech. Accordingly, Brunson's motion for summary judgment will be denied.

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss will be granted in part, and denied in part. Brunson's motion for summary judgment will be denied.

_____6/2/11_____          _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge