IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ELAINE BRUNSON               *

    Plaintiff,           *

    v.                   *     CIVIL NO.: WDQ-10-3045

HOWARD COUNTY BOARD          *
OF EDUCATION, et al.         *

    Defendants.          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Elaine Brunson sued the Howard County Board of Education ("Board"), Linda Wise, Jennifer Clements, and Cynthia Hankin (collectively "defendants") in the Circuit Court for Howard County, Maryland, for constitutional and state law claims. Pending is the defendants' motion for summary judgment. For the following reasons, the motion will be granted in part and denied in part. Brunson's Article 40 claim will be remanded to the Circuit Court for Howard County.

I.   Background[1]

    A.   Brunson and Atholton High School

Brunson is the mother of A.S. who, at all relevant times, was a student at Atholton High School ("AHS"). See ECF No. 33-3

---

[1] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

at 28-29 Tr. 78:20-79:9. On September 16, 2009, A.S. was accused of cheating on a Spanish exam by his teacher, Mary Coates. *See* ECF Nos. 33-7, 33-8. Brunson met with school officials about the incident, but was not satisfied with the resolution of her complaints. *See* ECF No. 33-9 at 3 ¶ 6.

In late November or early December 2009, Brunson distributed leaflets on cars parked at AHS and in nearby mailboxes. *Id.* at 3-4 ¶¶ 7-8. Brunson has admitted placing the flyers on the cars parked at AHS, but not in the mailboxes.[2] ECF No. 33-3 at 19-20 Tr. 55:5-56:7.

The leaflet was entitled "At Atholton High School: What do you do when the bullies are teachers and administrators?" ECF No. 33-9 at 12. The leaflet accused biology teacher Ms. Wunderlich,[3] Principal Marcy Leonard, Assistant Principal James Fritz, and Coates of "[r]acial discrimination, harassment and intimidation, denial of student and parent civil rights, discrepancy of grades, and dishonesty." *Id.* The leaflet recounted the incident between A.S. and Coates--without naming A.S.--and claimed that Wunderlich falsified the grades and papers of a black student--presumably A.S. *Id.* at 12-13. The leaflet also accused Leonard of covering up Wunderlich's

---

[2] Brunson has admitted, however, to handing leaflets to individuals "[t]hrough the Atholton community." ECF No. 33-3 at 21 Tr. 57:8.

[3] Wunderlich's first name is not in the record.

2

behavior. *Id.* The leaflet further claimed that black male students were given "harsher disciplinary actions, and wrongfully treated mainly by white female teachers at [AHS]." *Id.* at 14.

According to Leonard, "[t]he leaflets caused a great deal of distress and upset among members of the faculty of AHS." ECF No. 33-9 at 4 ¶ 9. Leonard was worried about the disruption that the leaflets caused to the teachers, and met with the faculty to allay their concerns. *Id.* at 5 ¶¶ 12-13. Leonard asserted that in her 17 years in Howard County schools, she was aware of no leaflet circulated on school property in the county that had "caused so much upset and disruption to professional faculty members." *Id.* at 6 ¶ 18.

On December 8, 2009, Wise, Chief Academic Officer for the Howard County schools, signed a Denial of Access Notice, which was sent to Brunson. *Id.* at 5-6 ¶ 15; *see id.* at 15. The Denial of Access Notice prohibited Brunson from entering AHS, and any other Howard County Public School property, for one year because of "Disruptive behavior; unauthorized leafletting (sic)." *Id.* at 17. Although not included in the formal Notice, the accompanying letter made an exception for Brunson "to enter [AHS] property for legitimate education reasons related to [her] son's schooling and only with prior notice to . . . Leonard, who will arrange a specific date and time." *Id.* at 15.

3

On September 10, 2010, Brunson attended her son's football game at AHS. ECF No. 33-13 at 4 ¶ 6. She was approached by Clements, AHS's new principal, who asked Brunson to leave. *See id.* at 2-3 ¶¶ 3-4, 7. Brunson refused to leave and was arrested by Howard County police for criminal trespass. *See id.* at 3 ¶ 8; ECF No. 33-15.

B.   Brunson's Employment with Tip Top

Beginning in August 2009, Brunson worked as a school bus driver for Tip Top Transportation ("Tip Top"). *See* ECF No. 33-3 at 3-4 Tr. 11:5-12:4. One of Brunson's routes was for Deep Run Elementary School ("Deep Run"). *Id.* at 6 Tr. 14:4. Hankin was the principal of Deep Run. ECF No. 33-11 at 2 ¶ 3.

On October 22, 2009, Hankin began receiving complaints from parents about Brunson's operation of her route. *Id.* at 3 ¶ 6. The Deep Run administration and David Ramsay, a central office representative responsible for busing, attempted to resolve the dispute between the parents and Brunson. *Id.* ¶ 7.

Following additional complaints, Ramsay and Brunson met to discuss the parents' concerns. *Id.* at 3-4 ¶¶ 7, 8. After a March 8, 2010 meeting, Brunson was reassigned to a new bus route. *Id.* at 4 ¶ 8.

After the reassignment, Deep Run sent a flyer to parents informing them of the change. ECF No. 33-12 at 4 ¶ 10. On

4

August 17, 2010, Brunson became an inactive driver because she failed to complete mandatory training for 2010. *Id.* ¶¶ 12-14.[4]

Hankin swore that she never contacted Tip Top about the complaints against Brunson. ECF No. 33-11 at 4 ¶ 10. At all relevant times, she was unaware of the leafleting. *Id.* ¶ 12. Ramsay swore that Brunson's reassignment was not because of her leafleting.[5] ECF No. 33-12 at 4 ¶ 11. At her deposition, Brunson testified that Ramsay told her that Hankin did not want her on the Deep Run route because of the leaflets. ECF No. 33-3 at 16 Tr. 50:11-15.

C. Procedural History

On October 22, 2010, Brunson sued the Board, Wise, Clements, and Hankin in the Circuit Court for Howard County, Maryland for (1) violations of the First Amendment to the United States Constitution under 28 U.S.C. § 1983 (Wise, Clements, and Hankin), (2) violation of Article 40 of the Maryland Declaration of Rights (all defendants), and (3) intentional interference with an economic relationship[6] (Board and Hankin). ECF No. 2.

---

[4] Ramsay's affidavit does not contain a paragraph 13. *See* ECF No. 33-12 at 4.

[5] Ramsay misidentifies the date of the leafleting as October 2009. ECF No. 33-12 at 4 ¶ 11.

[6] Brunson originally pled this claim as intentional interference with a contractual relationship. ECF No. 2 ¶ 39. In her opposition to the motion to dismiss, Brunson acknowledged that the claim was properly characterized as intentional interference

The same day, Brunson sought a temporary restraining order preventing enforcement of the Denial of Access Notice. ECF No. 4. On October 27, 2010, the defendants removed to this Court. ECF No. 1. On November 19, 2010, the Court approved a consent order permitting Brunson to attend A.S.'s football games and other enumerated extracurricular activities without an escort and prohibiting the defendants from issuing another Denial of Access Notice after its expiration. ECF No. 15.

On June 3, 2011, the Court dismissed Count I against the Board, and denied the remainder of the defendants' motion to dismiss and Brunson's motion for summary judgment. ECF No. 23. On June 1, 2012, the defendants moved for summary judgment.[7] ECF No. 33. On June 18, 2012, Brunson responded, ECF No. 35, and on July 13, 2012, the defendants replied, ECF No. 37.

II. Analysis

    A.   Legal Standard

Under Fed. R. Civ. P. 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine

---

with an economic relationship. See ECF No. 19 at 15. The Court and the parties have since treated the claim as such. See ECF Nos. 22 at 14-16, 33-1 at 32.

[7] The defendants' exhibits to their summary judgment motion contain numerous unredacted references to A.S.'s full name and Brunson's social security number in violation of Fed. R. Civ. P. 5.2(a) and the Court's Privacy Policy (Nov. 10, 2004). Brunson's exhibits also contain A.S.'s unredacted name. The Court cautions the parties that they risk sanctions for continued failure to redact.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8]  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

B.  Count I: First Amendment

The individual defendants assert that summary judgment on qualified immunity grounds is appropriate because Brunson's

---

[8] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

speech was defamatory and not protected under the First Amendment. *See* ECF No. 33-1. Brunson argues that the defendants are not entitled to qualified immunity because her speech was impermissibly limited. *See* ECF No. 34.

    1.    Qualified Immunity

"Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). Qualified immunity is an immunity from suit "rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of qualified immunity is a two-part inquiry:

> First, [the court] must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

*Cloaninger*, 555 F.3d at 330-31 (*quoting Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003)).

Clearly established rights include specifically adjudicated rights as well as those manifestly included within more general applications of the core constitutional principles involved.

*Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). There are three ways in which law becomes clearly established in Maryland: (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals; or (3) an authoritative decision by the Court of Appeals of Maryland. *Id.*[9]

A constitutional right is clearly established "when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."[10] The defendants bear the burden of proof on whether the constitutional right was clearly established at the time of the alleged violation.[11] The Court may address any part of the qualified immunity analysis first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

    2.    First Amendment Retaliation

To prevail on her claim for First Amendment retaliation, Brunson must show that: (1) she engaged in constitutionally protected speech, (2) the defendants engaged in a retaliatory

---

[9] Decisions from other circuits or states are not authoritative for qualified immunity analysis. *Wilson*, 141 F.3d at 114.

[10] *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (internal quotation marks omitted). This determination is an objective one. *Wilson v. Kittoe*, 337 F.3d 392, 402 (4th Cir. 2003).

[11] *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007).

action which adversely affected her protected speech right, and (3) there is a causal relationship between her protected speech and the defendants' actions. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). The Court's inquiry is whether a reasonable school officer could have believed that banning Brunson from AHS was lawful, in light of clearly established law and the information that officer possessed. *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 210 (4th Cir. 2009).

The defendants assert that Brunson's leaflets were not constitutionally protected because they were defamatory. ECF No. 33-1 at 21. Brunson contends that the Court cannot determine whether the leaflets were defamatory because whether the statements are true is a question of fact. ECF No. 34 at 9. She further argues that even if the statements were defamatory, the defendants impermissibly retaliated against her. *Id.*

For the qualified immunity analysis, the question is whether the Constitution clearly protects Brunson against retaliation for her allegedly defamatory statements. *See Cole*, 328 F. App'x at 210.

As a general matter, "speech that is . . . defamatory can be constitutionally proscribed."[12] The Supreme Court has developed a regime for analyzing whether a plaintiff may recover

---

[12] *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188 (2007); see *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-84 (1992).

for defamatory statements about her. Here, the question is whether Brunson's allegedly defamatory statements were protected from retaliation by the First Amendment.[13]

The states have taken different approaches in defining and codifying the tort of defamation. *See Beauharnais v. Illinois*, 343 U.S. 250, 254-57 (1952) (describing common law history of defamation). If state defamation law controlled, then, contrary to the law articulated by the Supreme Court, the First Amendment protections would vary from state to state.[14]

For example, in Maryland, a prima facie case of defamation requires proof that (1) the defendant made a defamatory statement to a third person, (2) the statement was false, (3) the defendant was at fault for making the statement, and (4) the plaintiff suffered harm. *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009). "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person."

---

[13] *Cf., e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *cf. also Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513-14 (assuming, but not holding, that *Sullivan* applied in product disparagement case).

[14] *See Gertz*, 418 U.S. at 347 (imposing a floor of no "liability without fault" for defamation suits by private individuals on private matters).

*Id.* (internal quotation marks omitted).[15]  *Sullivan* and *Gertz* essentially added elements to the tort of defamation rather than changed the definition of defamatory.[16]  Accordingly, whether the leaflets contained defamatory statements or subjected Brunson to liability for defamation are two different questions.[17]

There is no dispute that the leaflets contained defamatory statements--*i.e.*, those that would lower the community opinion

---

[15] The Restatement (Second) of Torts gives the elements of defamation as (1) "a false and defamatory statement concerning another," (2) "an unprivileged publication to a third party," (3) "fault amounting at least to negligence on the part of the publisher," and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558.  The Restatement defines a defamatory communication as one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* § 559.  The definition of defamatory does not include falsity. *Compare id.* § 559, *with id.* § 558.

[16] *See Gertz*, 418 U.S. at 347 (requiring fault as an element for suits by private individuals); *Sullivan*, 376 U.S. at 279-80 ("The constitutional guarantees require . . . a federal rule that prohibits a public official from recovery damages for a *defamatory* falsehood relating to his official conduct, unless he proves that the statement was made with 'actual malice' . . ." (emphasis added)); *Outlaw v. Standard Prods. Co.*, 122 F.3d 1062 (table), 1997 WL 577579 (table), at *1 (4th Cir. 1997) (discussing when "First Amendment protections usurp state standards in defamation cases").

[17] *See also* Restatement (Second) of Torts § 559 cmt d. ("There is a difference . . . between determining whether a communication is defamatory and whether damages can be recovered.")

12

of the named individuals.[18] It accused Leonard, Fritz, Coates, and Wunderlich of racial discrimination, "discrepancy of grades," dishonesty, theft, and falsification of documents.[19] *See* ECF No. 34-3. These accusations would lower the individuals' reputation, and are defamatory, although not necessarily actionable as defamation.[20]

The Court has found no Supreme Court, Fourth Circuit, or Maryland Court of Appeals decision that states whether defamatory character or liability for defamation removes a statement from First Amendment protections in a retaliation

---

[18] *See* ECF No. 34 at 9 (Brunson arguing the truth of the statements, not their intended effect). Further, the point of the leaflet appears to be an attempt to lower the teachers' and administrators' reputations in the community to force changes at the school. *See* ECF No. 34-3 at 3. The leaflets accuse the targets of racial discrimination, "discrepancy of grades," dishonesty, theft, and falsification of documents, states that "[t]he princip[al] and administrators choose to ignore what's going on," and calls on the reader to "stand up," "come together," and "let our voices be heard." ECF No. 34-3.

[19] The record does not contain sufficient information to determine the truth or falsity of the allegations.

[20] *See* Restatement (Second) of Torts § 559; *see also Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (stating defamatory statements include those that "imply the existence of serious character defects such as dishonesty or immortality" or "might seriously damage [one's] standing and associations in [her] community" (internal quotation marks omitted)); *Koolvent Aluminum Prods., Inc. v. Azrael, Gann & Franz*, 52 F.3d 321 (table), 1995 WL 227351, at *3 (4th Cir. 1995) ("A statement is defamatory if it . . . ascribes dishonesty, fraud, lack of integrity, or reprehensible conduct . . ." (internal quotation marks omitted)).

case. Cases concerning tort liability do not provide adequate guidance or context to definitively resolve the issue in this case. The tort cases do not address the interaction between the defamatory character of the speech and the First Amendment; instead they focus on the status of the target of the defamation and the subject matter of the speech. *See, e.g.*, *Gertz*, 418 U.S. at 342-47. The law is not clear enough for a reasonable official to understand what would violate the right to free speech. *See Ridpath*, 447 F.3d at 313. Brunson's right to make defamatory statements, if it exists, is not clearly established.[21] As there was no clearly established right, the defendants are entitled to qualified immunity, and thus summary judgment, on the retaliation claim.[22]

---

[21] *See also S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 242 (4th Cir. 2009) (declining to apply *Sullivan* to securities case); *Suarez*, 202 F.3d at 689-91 (declining to discuss what constitutes a defamatory retaliatory statement because the statement at issue did not imply a threat, punishment, or adverse action). *But see Basham v. McBride*, No. 5:04-cv-1335, 2008 WL 2595686, at *3-6 (S.D.W.V. June 26, 2008) (noting that it is an outlier in First Amendment jurisprudence, but finding that it is clearly established that the First Amendment prevents prison guards from censoring defamatory speech by prisoners).

[22] The parties also argue about Atholton's forum status and Brunson's right to speak there. *See* ECF Nos. 33-1 at 16-21, 34 at 4-8. Generally, there is no constitutional right of access to public schools. *Cole*, 328 F. App'x at 209. Further, Brunson claims only retaliation, not a violation of her right to speak in the school forum. *See* ECF No. 2 ¶ 27; *see also, e.g.*, ECF No. 34 at 8 ("This case . . . involves an attempt to penalize an exercise of free speech."). Accordingly, the Court need not analyze Brunson's right to speak in the school forum and whether

C. Count II: Article 40

The parties agree that Article 40 of the Maryland Declaration of Rights[23] is read *in pari materia* with the First Amendment. *Nefedro v. Montgomery Cnty.*, 996 A.2d 850, 855 n.5 (Md. 2010); see ECF Nos. 33-1 at 30, 34 at 14. They also indicate that the disposition of the claims against the individual defendants should be the same. See ECF Nos. 33-1 at 30, 34 at 14. The qualified immunity analysis is not dispositive of the Article 40 claims, however, because under Maryland law there is no qualified immunity for state constitutional torts. *See Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004).

Under Maryland law, school employees are not liable when acting in the scope of their employment without malice and gross negligence.[24] This does not mean, however, that they are immune from suit; rather, judgments may be entered against them, but "the county board alone is responsible for satisfying the

---

the right was impermissibly limited. See *Cole*, 328 F. App'x at 209 n.7.

[23] Article 40 states "[t]hat the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." Md. Const. Decl. of Rights, art. 40.

[24] Md. Code Ann., Cts. & Jud. Proc. § 5-518(e); see *Lee*, 863 A.2d at 310 (holding that Maryland Tort Claims Act applies to constitutional torts).

15

judgment." *Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 50 A.3d 1137, 1155 (Md. 2012). Further, the Board is able to assert sovereign immunity only to the extent that the claim exceeds $100,000 or the limit of its liability insurance. Md. Code Ann., Courts & Jud. Proc. § 5-518(c). Although Brunson seeks damages of $200,000, the board is not fully immune to the claim. *See id.* Accordingly, the Court must address the merits of Brunson's Article 40 retaliation claim.

As noted above, Article 40 is generally read *in pari materia* with the First Amendment. *See Nefedro*, 996 A.2d at 855 n.5 (Md. 2010). However, "simply because a Maryland constitutional provision is *in pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart." *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (Md. 2002). Perhaps because of the *in pari materia* reading, there is virtually no state caselaw concerning a defamation exception to Article 40[25] or what elements would constitute a claim for retaliation under Article 40.

This Court has supplemental jurisdiction over the Article 40 claim. *See* 28 U.S.C. § 1367(a). The Court may decline to

---

[25] Unlike the First Amendment, Article 40 expressly states that individuals are "responsible for the abuse" of the right to free speech. Md. Const. decl. rights Art. 40.

16

exercise supplemental jurisdiction if, inter alia, "the claim raises a novel or complex issue of state law" or it "has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(1), (3).

As discussed above, this case raises a novel issue of state law in interpreting Article 40. Further, summary judgment will be issued on Count I, the only federal claim. See supra Part II.B. Accordingly, the Court will decline to exercise supplemental jurisdiction over Count II and remand it to the Circuit Court for Howard County.[26]

D. Count III: Intentional Interference with an Economic Relationship[27]

The defendants assert that they did not impermissibly interfere with Brunson's employment with Tip Top because Hankin

---

[26] See Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (courts have authority to remand when declining supplemental jurisdiction). Section 1441(c) of 28 U.S.C. has recently been revised to clarify the statutory authority for remand, but only for cases commenced after January 6, 2012. See Crittenden v. Glanz, No. 12-CV-0156-CVE-TLW, 2012 WL 3101806, at *1 n.1 (N.D. Okla. July 31, 2012); H.R. Rep. No. 112-10, at 11-12 (2011).

[27] The Court will exercise supplemental jurisdiction on this count for judicial economy because Brunson did not oppose the motion and there is no genuine dispute of material fact. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Southerland v. Hardaway Mgmt. Co., 41 F.3d 250, 256-57 (6th Cir. 1994) (finding no abuse of discretion in exercising supplemental jurisdiction over one, but not another, claim).

did not know about the leafleting. ECF No. 33-1 at 33. Brunson has not opposed summary judgment on this claim.

To prevail on her claim of intentional interference with an economic relationship under Maryland law, Brunson must show: "(1) that [Hankin] has committed intentional and willful acts; (2) calculated to cause damage to [Brunson] in [her] lawful business; (3) done with unlawful purpose of causing such damage, without right or justification; and (4) that actual damage has resulted from those acts." *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 691 (D. Md. 2001) (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 269 (Md. 1994)).

To satisfy the unlawful purpose element, the defendant's conduct must be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." See *Alexander & Alexander*, 650 A.2d at 271.

Hankin swore that she did not know of the leaflets until after this suit was instituted. ECF No. 33-11 at 4 ¶ 12. Further, Ramsay swore that Brunson's reassignment from Deep Run was not based on her leafleting. ECF No. 33-12 at 4 ¶ 11. Brunson has not presented any contrary evidence.[28] Accordingly,

---

[28] At Brunson's deposition, a partial transcript of which was submitted by the defendants, she stated that Hankin asked that she be pulled from her position because of the leaflets. ECF No. 33-3 at 16 Tr. 50:2-4. Brunson, admitted however, that she

there is no evidence that Hankin's conduct was wrongful or retaliation for Brunson's speech. *See Alexander & Alexander*, 650 A.2d at 271. The defendants are entitled to summary judgment on this claim.

III. Conclusion

For the reasons stated above, the defendants' motion for summary judgment will be granted in part and denied in part. Brunson's Article 40 claim will be remanded.

_____1/30/13_____          _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge

---

had no documents or witnesses to support that assertion. *Id.* 50:5-10. The only basis for this assertion was "[b]ecause Mr. Ramsay informed me that's the reason I was pulled from her run--her school." *Id.* 50:14-15. As an out of court statement offered to prove the truth of the matter asserted, Ramsay's statement would be inadmissible hearsay. *See* Fed. R. Evid. 801. Because "[h]earsay or conclusory statements with no evidentiary basis cannot defeat a summary judgment motion," this testimony does not create a genuine dispute of material fact. *Hoskins*, 2012 WL 5921041, at *8 (citing *Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995)).